UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| CHRISTOPHER J. DRESSER | CIVIL ACTION |
| VERSUS | NO: 08-2662 c/w 09-2755, 08-2663 |
| | [REF: 08-2663, 09-2755] |
| MEBA MEDICAL BENEFITS PLAN | SECTION: "C" (5) |

## ORDER AND REASONS

Before the Court are two interrelated motions to dismiss by Defendants the United States Coast Guard (Rec. Doc. 77) and Joseph Ingolia, Kenneth Wilson, and Alyssa Paladino (Rec. Doc. 82). The motions are before the Court on the briefs without oral argument. Having reviewed the record, memoranda of counsel, and the law, the Court GRANTS Defendants' Motions to Dismiss for the following reasons.

**I. Background**

Christopher J. Dresser ("Dresser") originally brought suit against various Coast Guard Administrative Law Judges, their clerks and administrative staff, and the Commandant of the Coast Guard and his legal staff for declaratory and injunctive relief, Writs of Mandamus, and *Bivens* actions regarding the revocation, and threatened revocation, of Plaintiffs' engineering licences and merchant mariner documents.

Dresser claims that the Coast Guard's Suspension and Revocation ("S & R") hearings

violated his Fifth Amendment due process rights because the Administrative Law Judges ("ALJ's") colluded with the other Defendants to pre-determine the outcome of the S & R hearings. In 1997, Dresser voluntarily submitted to a urine drug screen to obtain a "drug free certificate." However, the drug screen returned positive for THC. Dresser asserts that the positive result for THC was a product of his ingestion of hemp seed oil as a dietary supplement. Subsequent to the positive drug screen, the Coast Guard initiated an investigation culminating in a S & R proceeding against Dresser. ALJ Boggs[1] ruled in favor of the Coast Guard, holding that Dresser used a dangerous drug (marijuana), and revoked Dresser's engineering license. Dresser appealed the decision to the then Commandant of the Coast Guard, T.H. Collins, who affirmed ALJ Boggs' order. Next, Dresser appealed to the National Transportation Safety Board ("NTSB"). The NTSB remanded the case for a new hearing because of the appearance of impropriety on ALJ Boggs' part.[2] Chief ALJ Ignolia assigned Dresser's case to ALJ Brudinzski on remand. Following a hearing on December 7, 2004, ALJ Brudzinski discussed the case with defendants Wilson and Paladino.[3] On June 14, 2005, ALJ Brudzinski ruled in favor of the Coast Guard, again revoking Dresser's licenses. Dresser then appealed to the Commandant of the Coast Guard, and simultaneously brought suit in this Court.

In that suit, Dresser maintained that ALJ Brudzinski's decision and order revoking his engineering license and merchant mariner documents were unconstitutional because of (1) *"ex parte communications"* between ALJ Brudzinski and Chief ALJ Ingolia, as well as *"ex parte*

---

[1] ALJ Boggs is not a defendant in the current suit.

[2] ALJ Boggs' son represented an insurance company in the civil products liability case that Plaintiff Dresser brought against the manufacturer of the hemp seed oil supplement.

[3] Defendants Wilson and Paladino were attorneys with the ALJ Docketing Center in Baltimore, MD, and were acting as ALJ Brudzinski's docketing clerks.

2

communications" between ALJ Brudzinski and Defendants Paladino and Wilson; and, (2) an institutionalized ALJ policy to rule in favor of the Coast Guard regarding hemp seed oil defenses to positive toxicology tests.

The Court held, *inter alia*, that it lacked jurisdiction over plaintiffs' claims arising out of the Administrative Procedure Act ("APA") because the appeal before the Commandant meant that there had not yet been final agency action, and that Dresser's claims under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971) were preempted by the administrative review framework. *Dresser v. Ingolia*, 2007 WL 3353305 at *3-8 (E.D.La. 2007). On appeal, the Fifth Circuit affirmed the Court's holding regarding the APA claims, and held this Court lacked subject matter jurisdiction to consider Plaintiffs' *Bivens* claims because they were "inescapably intertwined" with a review of the merits and procedure of the agency's decision. *Dresser v. Ingolia*, 307 Fed. Appx. 834, 841-43 (5th Cir. 2009).

After this Court's previous Order and before the Circuit's, the Commandant issued a ruling, not in Dresser's favor. *Id.* at 839. Dresser now reurges his petition to the Court, and Defendants again contest the Court's jurisdiction, and the availability of a *Bivens* remedy, and argue that the individual defendants are immune from suit.

**II. Law and Analysis**

  *a. Standard of Review*

Defendants argue that this Court lacks subject matter jurisdiction and that Plaintiff has failed to state a claim for which relief can be granted. A motion to dismiss for lack of subject matter jurisdiction must be granted if the court lacks statutory authority to hear and decide the dispute. Fed. R. Civ. P. 12(b)(1). The burden of establishing subject matter jurisdiction falls squarely upon the

plaintiff. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). In ruling on a motion to dismiss under Rule 12(b)(1), a court may look to: "(1) the complaint alone; (2) the complaint supplemented by undisputed facts; or, (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Robinson v. TCI/US West Commc'ns*, 117 F.3d 900, 904 (5th Cir. 1997). Where a court reviews extrinsic evidence for a Rule 12(b)(1) motion, no presumption of truthfulness attaches to the plaintiff's allegations. *Williamson v. Tucker*, 645 F.2d 404, 412-13 (5th Cir. 1981).

In deciding a motion to dismiss for failure to state a claim, the standard to be applied is not whether it is conceivable that some set of facts could be developed to support the allegations in the complaint, but rather whether the plaintiff has stated enough facts in the complaint to allow a court to conclude that it is "plausible" that the plaintiff is entitled to relief. *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007). The Court must accept as true all well-plead allegations and resolve all doubts in favor of the plaintiff. *Tanglewood East Homeowners v. Charles-Thomas, Inc.*, 849 F.2d 1568, 1572 (5th Cir. 1988).

### b. *Dresser's APA Claims*

Defendants argue that the Court lacks jurisdiction over Dresser's APA claims because he did not follow a statutorily prescribed method of review. The proper course of action, they argue, would have been to seek review of the Commandant's decision before the NTSB and ultimately a Court of Appeals. Instead, Dresser filed an APA action against the Coast Guard in district court.

Under § 10(c) of the APA,

> Agency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review. A preliminary, procedural, or intermediate agency action or ruling not directly reviewable is subject to review on the review of the final agency action. Except as otherwise expressly

4

required by statute, agency action otherwise final is final for the purposes of this section whether or not there has been presented or determined an application for a declaratory order, for any form of reconsideration, or, unless the agency otherwise requires by rule and provides that the action meanwhile is inoperative, for an appeal to superior agency authority."

5 U.S.C. § 704. For the purposes of this litigation, the language at issue is "final agency action for which there is no other adequate remedy in a court."

*Darby v. Cisneros*, 509 U.S. 137 (1993), is instructive as to "final agency action." There, the petitioner challenged a ruling by the Department of Housing and Urban Development ("HUD"), and a hearing was held before an Administrative Law Judge ("ALJ"). *Id.* at 141. The ALJ ruled against the petitioner. Under HUD regulations, he could then have requested review by the HUD Secretary. Instead, he appealed to the district court. At issue before the Supreme Court was whether the district court could impose an exhaustion requirement in the absence of clear agency language mandating the appeal to the Secretary. In finding that the district court had jurisdiction to review the appeal, the Supreme Court focused on the Congressional intent behind the APA: "Congress clearly was concerned with making the exhaustion requirement unambiguous so that the aggrieved parties would know precisely what administrative steps were required before judicial review would be available." *Id.* at 146. Thus, they concluded that "Section 10(c) explicitly requires exhaustion of all intra-agency appeals mandated either by statute or by agency rule; it would be inconsistent with the plain language of § 10(c) for courts to require litigants to exhaust optional appeals as well." *Id.* at 147. *Cf. Dawson Farms v. Farm Service Agency*, 504 F.3d 592 (5th Cir. 2007) (discussing jurisdictional compared to discretionary exhaustion requirements in case where appeals were channeled to the district court after agency review).

Of course, *Darby* was not concerned with which federal court had jurisdiction, just when the

federal courts had jurisdiction. Defendants argue that the question of "which" is taken up by a separate line of cases, and by the second half of the phrase at issue: "for which there is no other adequate remedy at court." The Court looks first to a somewhat earlier decision, *Bowen v. Massachusetts*, 487 U.S. 879 (1988). There, the Supreme Court held that:

> . . .although the primary thrust of § 704 was to codify the exhaustion requirement, the provision as enacted also makes it clear that Congress did not intend the general grant of review in the APA to duplicate existing procedures for review of agency action. As Attorney General Clark put it the following year, § 704 "does not provide additional judicial remedies in situations where the Congress has provided special and adequate review procedures." At the time the APA was enacted, a number of statutes creating administrative agencies defined the specific procedures to be followed in reviewing a particular agency's action; for example, Federal Trade Commission and National Labor Relations Board orders were directly reviewable in the regional courts of appeals, and Interstate Commerce Commission orders were subject to review in specially constituted three-judge district courts. When Congress enacted the APA to provide a general authorization for review of agency action in the district courts, it did not intend that general grant of jurisdiction to duplicate the previously established special statutory procedures relating to specific agencies.

*Id.* at 903 (footnotes omitted).

At first blush, these cases appear to be at odds with one another, yet the *Darby* court mentioned *Bowen* as an interpretation of § 10(c) "in other contexts." 509 U.S. at 145-46. The *Darby* court used strong language to emphasize that judicial review was available after final action. *Id.* at 146. But if the analysis of § 10(c) ended there, the second half of the clause, regarding adequate remedies in a court, would be rendered meaningless, and the above quoted language in *Bowen* would be nullified. Adopting an interpretation of § 10(c) that all final agency actions are appealable regardless of the statutorily prescribed review structure would therefore violate the judicial principle of statutory construction that each word in a statute has significance and must be given meaning in construing the statute. *See Walters v. Metropolitan Educ. Enters.*, 519 U.S. 202, 209 (1997) (interpreting the definition of employer in 42 U.S.C. § 2000e(b) in such a way as to give

6

each word some operative effect); *Moskal v. United States*, 498 U.S. 103, 109 (1990) (refusing to adopt a construction of 18 U.S.C. § 2314 that violates the established principle that a court should give meaning to every clause and word of a statute); *Marek v. Chesny*, 473 U.S. 1 (1985) (interpreting Fed.R.Civ.P. 68 and 42 U.S.C. § 1988 in such a way to as to give meaning to each word in both); *Soares v. Brockton Credit Union (In re Soares)*, 107 F.3d 969, 978 (1st Cir.1997) (adopting interpretations of the terms "annul" and "terminate" in 11 U.S.C. 362(d) to give independent meaning to each).

This is a distinction that neither the circuit courts nor the Supreme Court have investigated. However, the explanation for the judicial silence on this topic can be found in the varying structures of administrative review for the agencies at issue. In *Darby*, there was no discussion of appellate courts. Indeed, neither the HUD regulations nor the National Housing Act specify the level of judicial review appropriate for "limited denials of participation," which was the administration action at issue in *Darby*.[4] 509 U.S. at 140. Thus, if a court was going to review HUD's actions, the district court would have been proper, and the Supreme Court there was not concerned with whether review by an appeals court following an optional appeal could be avoided by appealing to a district court instead. *See also Bangura v. Hansen*, 434 F.3d 487, 1145-46 (6th Cir. 2006)) (applying *Darby* in case where agency review allocated to district court); *Young v. Reno*, 114 F.3d 879, 881-83 (9th Cir. 1997 (same). *But see Mejia Rodriguez*, 562 F.3d 1137, 1145 n.15 (11th Cir. 2009) ("Moreover, the government's argument that 8 U.S.C. § 1252(a)(2)(D) commits jurisdiction of constitutional and legal issues solely to a court of appeals misconstrues the nature of that judicial review provision.

---

[4] 42 U.S.C. § 3545(h) provides for review in "the appropriate court of appeals" for decisions by the Secretary regarding civil money penalties. Per 24 C.F.R. § 26.54, "Judicial review [of HUD actions pursuant to the APA] shall be available in accordance with applicable statutory procedures and the procedures of the *appropriate federal court*." (emphasis added).

7

Rather § 1252(a)(2)(D) clarifies that review of legal and constitutional questions are possible on a petition for review, but does not withdraw district court jurisdiction that derives from other sources."). The latter question was addressed in the quoted passage of *Bowen*, and answered in the negative. 487 U.S. at 903.

There is a caveat to the holding in *Bowen*, however. There, the Court ultimately found that the district court had jurisdiction over the claims at issue because the alternative "special review procedure" directed appeals to the Court of Claims, which "does not have the general equitable powers of a district court to grant prospective relief." *Id.* at 905. Because the Court of Claims provided an inadequate remedy to address the claims at issue, the district court was a proper venue in that case. *Id.*

Therefore, taken together, the two cases stand for the proposition that a "final agency action" is reviewable in a district court absent strong language to contrary, unless Congress developed a "special statutory procedure[]" for reviewing agency decision making that is adequate to provide relief on the facts of the case. In other words, optional appeals, as discussed in *Darby*, become non-optional when a circuit court sits atop the administrative review structure established by Congress.

This answer to the jurisdictional question is supported in the reasoning of *Natural Resources Defense Council v. Abraham*, 355 F.3d 179 (2d. Cir. 2004) ("*NRDC*") and *Florida Power & Light Company v. Lorion*, 470 U.S. 729 (1985). In *NRDC*, a district court held that it lacked subject matter jurisdiction due to the structure of the Energy Policy and Conservation Act, and the Second Circuit affirmed. Although the language of the act was not mandatory ("[a]ny person who will be adversely affected by a rule prescribed under [section 325 of the act] *may* . . . file a petition with the United States court of appeals for the circuit in which such person resides . . ." 355 F.3d at 192

8

(emphasis added)) the court noted that "when there *is* a specific statutory grant of jurisdiction in the court of appeals, it should be construed in favor of review by the court of appeals." *Id.* at 193. In *Florida Power & Light Company*, the Supreme Court was faced with the question of whether review of agency action was more appropriate in the district or appellate court for the review of licensing proceedings under the Atomic Energy Act. In holding that jurisdiction lay with the appellate court, the Court observed that Congress had indicated an intention to "avoid the duplication of effort involved in the creation of a separate record before the agency and before the district court." *Id.* at 740.

The Court therefore concludes than unlike exhaustion, no sweeping language is required to infer from a statutorily created review structure that Congress intended to avoid district court review in favor of an administrative appellate body and a circuit court.

In the instant case, 49 U.S.C. § 1133 states that the National Transportation and Safety Board ("NTSB") "shall review on appeal. . . a decision of the head of the department in which the Coast Guard is operating on an appeal from the decision of an administrative law judge denying, revoking, or suspending a license, certificate, document, or register. . ." Following that, "[t]he appropriate court of appeals of the United States or the United States Court of Appeals for the District of Columbia Circuit may review a final order of the National Transportation Safety Board" per 49 U.S.C. § 1153.

Defendants argue that this statutory structure requires aggrieved parties under the APA to appeal the decisions of the Commandant first to the NTSB, and then to the appropriate Court of Appeals, divesting a district court of jurisdiction. (Rec. Doc. 77). The Court agrees. Section 10(c) of the APA only provides jurisdiction where there is no adequate remedy in a court. Here, one

9

exists. To hold otherwise would be to "duplicate the previously established special statutory procedures relating to [the NTSB]." *See Bowen*, 487 U.S. at 903.

This conclusion is supported, albeit indirectly, in the decisions of several other district courts. *See Kinneary v. City of New York*, 358 F. Supp. 2d 356. 360-61 (S.D.N.Y 2005) ("[Plaintiff] appealed the agency action taken by the Coast Guard. Accordingly, judicial review of final agency action would be from an order of the NTSB, appropriately filed in the Second Circuit Court of Appeals"); *Bruch v. U.S. Coast Guard*, 736 F. Supp. 634, 635 (E.D. Pa. 1990) ("Clearly, if the final decision of ALJ Fitzpatrick had revoked or suspended plaintiffs' licenses, and that decision had been upheld by the Commandant of the Coast Guard, then the NTSB, pursuant to 49 U.S.C.App. § 1903(a)(9)(B) [since replaced by 49 U.S.C. s. 1133], would have been the tribunal to which plaintiffs' appeals should initially have been directed. Moreover, no United States court could have reviewed such a revocation or suspension *unless* the NTSB had first reviewed the action of the ALJ pursuant to the mandate of 49 U.S.C.App. § 1903(a)(9)(B), thereby exhausting all administrative avenues"); *Bruch v. U.S. Coast Guard*, 749 F. Supp. 688, 690; (E.D. Pa. 1990) ("the court of appeals would be the court having jurisdiction had plaintiffs not prevailed on the merits of their underlying claim before an administrative judge"); *Blackwell v. United States*, 586 F. Supp. 947, 948 (S.D. Fla. 1984) ("the agency action is indeed reviewable, but the statute at issue specifically calls for review by the Court of Appeals [from the NTSB]").

This conclusion is at odds with *McDonald v. United States of America*, 2005 WL 1571215 (S.D. Tex. 2005), in which the judge concluded that the Commandant's decision was a final agency action, and that therefore it was reviewable in the district court under the APA. *Id.* at *5. However, the *McDonald* court did not consider whether there was a preexisting "adequate remedy in a court"

that might preclude district court review, and the Court therefore disagrees with the decision in *McDonald*.

Finally, the Court must ask whether this review structure provides an adequate remedy in this case. Although Dresser makes some arguments about the adequacy of the administrative review process in the context of his *Bivens* claims, discussed below, those focus almost entirely on the Commandant's review, and not the NTSB's or the appellate court's. His only objection about the adequacy of the appellate court's review is that "it is only available after he first pursues yet another administrative appeal." (Rec. Doc. 85 at 12). Dresser cites no authority for his claim that review by a court of appeals (and by the NTSB) will be inadequate. Accordingly, the Court holds that the method of review established by Congress is adequate, and therefore, that is the path he must follow.

The Court is sympathetic to Dresser's undoubtedly frustrating procedural posture. (See Rec. Doc. 101). However, if Dresser believed his remedy will come when his complaints are aired in front of a court, and not an administrative body, then that court should have been the Court of Appeals.

### c. *Dresser's* Bivens *claims*

Having concluded that the Court lacks jurisdiction over Dresser's APA claims, the decision surrounding his *Bivens* claims becomes straightforward.

Although a line of cases addresses exhaustion requirements and statutorily created review processes specific to the *Bivens* context, it nonetheless uses logic that parallels that laid out above: complying with the statutory review structure is mandatory unless the review available is inadequate.

11

In *Zephyr Aviation, L.L.C. v. Dailey*, 247 F.3d 565 (5th Cir. 2001), the Fifth Circuit allowed an aircraft operator to bring a *Bivens* claim against the Federal Aviation Administration ("FAA") because the administrative appeal structure did not "provide a forum for redressing constitutional violations by individual FAA inspectors with monetary damages." *Id.* at 571. Again, the court's initial focus was on congressional intent. *Id.* at 570. Under the Aviation Act, orders by the FAA administrator could be appealed to the NTSB and then to a Federal Circuit Court. *Id.* at 571. The aircraft operator eschewed that process and instead sued in district court. *Id.* at 569. Under FAA regulations, the only exhaustion requirement was that orders of the FAA be final before becoming subject to review in federal court. *Id.* at 571. Because there was no mandated exhaustion, and because the administrative appeal structure was inadequate, the court found that the district court had jurisdiction over the *Bivens* claims. *Id.* at 572. In so holding, the court emphasized that "parties may not avoid administrative review simply by fashioning their attack on an FAA decision as a constitutional tort claim against individual FAA officers" but found that the facts of *Zephyr* did not implicate that concern. *Id.*

Both *Mace v. Skinner*, 34 F.3d 854 (9th Cir. 1994) and *Merritt v. Shuttle, Inc.*, 187 F.3d 263 (2d Cir. 1999) support the logic in *Zephyr*. In *Mace*, the court found that the district court had jurisdiction over *Bivens* claims against the FAA for very similar reasons as the court in *Zephyr*: "[his claims] are not based on the merits of his individual situation, but constitute a broad challenge to allegedly unconstitutional FAA practices. Moreover, . . . the administrative record . . . would have little relevance to Mace's constitutional challenges." 34 F.3d at 859 (footnotes omitted). By contrast, in *Merritt*, the court found that although the plaintiff "styles this claim in constitutional terms, he ultimately challenges the manner in which the officials conducted themselves during and

12

after the incident, and disputes the ALJ's factual conclusion that he bore responsibility for an ill-considered decision to take off." 187 F.3d at 271. They concluded that because the substance of the constitutional claim was "inescapably intertwined" with review of the revocation order and would result in adjudication of the evidence, the full administrative review process could not be avoided. *Id.*

In the earlier round of litigation in this case, the Fifth Circuit spoke directly on this issue and held that this Court could not rule on the *Bivens* claims because they "were inescapably intertwined with a review of the procedure and merits surrounding their respective [Decision & Orders]. . . . [H]ere the allegations of ALJs 'fixing' cases necessitates a review of the ALJs' decision making and the merits of each plaintiff's arguments regarding whether his license should have been revoked." *Dresser v. Ingolia*, 307 Fed. Appx. 834, 843 (5th Cir. 2009). Because the Court holds that administrative review remains the proper course of review for Dresser's APA claims, the *Bivens* claims remain "inescapably intertwined."

## III. Conclusion

Because the Court holds that it does not have jurisdiction to consider Dresser's claims, it does not address the merits of Defendants' arguments relating to the preemption of a *Bivens* remedy or the immunity of the individual defendants.

Accordingly,

Defendants' Motions to Dismiss, (Rec. Docs. 77 and 82) are GRANTED. Plaintiff's claims under the APA and his *Bivens* claims are DISMISSED.

New Orleans, Louisiana, this 24th day of March, 2010.

13

**HELEN G. BERRIGAN**
**UNITED STATES DISTRICT JUDGE**